UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEAN STROPE,

                Plaintiff,

      -vs-                                        06-CV-628C(SR)

UNUM PROVIDENT CORP., et al.,

                Defendants.

---

APPEARANCES:    CREIGHTON, PEARCE, JOHNSEN & GIROUX (JONATHAN G. JOHNSEN, ESQ., of Counsel), Buffalo, New York, Attorneys for Plaintiff.

                       PHILLIPS LYTLE LLP (PAUL K. STECKER, ESQ., of Counsel), Buffalo, New York, Attorneys for Defendants.

## INTRODUCTION

This is an action, brought pursuant to § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, in which plaintiff seeks benefits under the Short Term Disability ("STD") Plan of her former employer, defendant HSBC Bank USA. Benefits payable in accordance with the plan are insured under a group insurance policy issued to HSBC by defendant First Unum Life Insurance Company. This case is before the court on defendant's motion for summary judgment (Item 9) and plaintiff's cross motion for the same relief (Item 37).

## BACKGROUND and FACTS

Plaintiff was employed by HSBC Bank as a Senior Vice President. In April 2005, she saw her doctor for complaints of extreme fatigue. Dr. Danuta Derkatz advised plaintiff

to stay off work until her next appointment in May 2005. On April 5, 2005, plaintiff applied for benefits under the STD Plan. A plan participant is eligible for benefits under the STD Plan for a maximum of 26 weeks if the participant is "continuously disabled" through the policy's elimination period. "Disabled" is defined as "*limited* from performing the *material and substantial duties* of your *regular occupation*" due to sickness or injury combined with "a 20% or more loss in weekly earnings" due to the same sickness or injury (AR 410).[1]

On April 5, 2005, defendant sent a letter to plaintiff's physician asking her to complete an enclosed Attending Physician's Statement (AR 218). On April 15, 2005, defendant sent a letter to Dr. Derkatz requesting copies of all medical records from April 1, 2005 to the present (AR 222). In response, defendant received an office note dated April 1, 2005, which indicated the visit was a follow-up for Epstein-Barr Virus and that plaintiff felt "terrible; very, very tired." Additionally, Dr. Derkatz wished to rule out sleep apnea and advised plaintiff to stay off work from April 5 until May 6, 2005 (AR 241).

In a letter dated April 22, 2005, defendant advised plaintiff that the information received from Dr. Derkatz was insufficient. Specifically, defendant requested "[a] list from your physician indicating the activities you cannot and should not do along with an explanation of the medical reasoning supporting these restrictions and limitations." (AR 244). Additionally, defendant sent a letter to Dr. Derkatz requesting additional medical records from January 1, 2005 (AR 253).

On April 28, 2005, defendant received additional medical records and the completed Attending Physician's Statement. In it, Dr. Derkatz stated that plaintiff suffered from

---

[1] References to "AR" are to the Administrative Record, filed as Item 15 to the record.

fatigue, tested positive for the Epstein-Barr Virus, and "can only perform simple tasks as she can tolerate." She was expected to be able to return to work on May 6, 2005 (AR 265).

On May 5, 2005, plaintiff's file was reviewed by two nurse-consultants. At that time, it was determined that the medical records did not support the restrictions and limitations set forth (AR 268-69). In a letter dated May 5, 2005, defendant advised plaintiff that the medical information was insufficient to consider benefits and again asked her for a list of "activities you cannot and should not do along with an explanation of the medical reasoning supporting these restrictions and limitations." (AR 272). On May 13, 2005, defendant sent Dr. Derkatz an Estimated Functional Abilities Form and asked that she complete it and provide any additional medical records from April 2 until May 13, 2005 (AR 288).

In a letter dated June 1, 2005, defendant advised plaintiff that her "disability is not supported by medical documentation" and her claim had been denied (AR 306). Defendant stated that "it [was] unclear as to why [plaintiff] could not work as of April 1, 2005" (AR 306). Defendant advised plaintiff that she could provide additional medical documentation, including sleep apnea records, for further review within 180 days of the letter. *Id.* On June 6, 2005, Dr. Derkatz sent a letter to defendant stating that plaintiff was under her care for "Ebstein [sic] Barr Virus (Chronic Fatigue Syndrome), Depression, Hypothyroid, borderline sleep apnea and possible Lupus Erythematosis." (AR 318). She stated that plaintiff's symptoms included "profound fatigue, joint pain of her knees, hips, feet, hands and upper back with tenderness to palpation" and that these symptoms were "currently debilitating and preclude[d] her from any type of work." *Id.* Dr. Derkatz stated that plaintiff "cannot concentrate, has difficulty ambulating and must rest frequently throughout the day." *Id.*

Following a clinical review by a nurse-consultant on June 13, 2005, defendant again found that the documentation did not support the restrictions and limitations of no work "which appear to be overly restrictive as [plaintiff] noted to have multiple diagnoses with multiple complaints." (AR 321). Additionally, the nurse-consultant stated there was "no apparent documentation in the medical records which would appear to reflect an impairment in physical or cognitive functioning capabilities." *Id.*

In a letter dated June 20, 2005, defendant advised plaintiff that her claim was again denied. Although her symptoms were noted, defendant concluded that plaintiff did "not have clinically supported restrictions and limitations that would preclude [her] from performing the material and substantial duties of [her] occupation based on the medical information provided to us." (AR 328).

Plaintiff then requested an administrative appeal of the decision. In response to a letter dated July 11, 2005, Dr. Derkatz provided additional records including a January 12, 2005 lab report, an April 2005 report of plaintiff's sleep apnea study, a June 2005 report from a rheumatologist, and additional office notes through July 15, 2005. The January 2005 lab report indicated that plaintiff tested positive for two of three antibodies associated with the Epstein-Barr Virus. It is noted on the lab report that "ninety percent of most adult populations will be positive for [these two antibodies] due to previous infection or exposure" (AR 359). In the sleep apnea report, Dr. Edward Ventresca found that plaintiff's overnight polysomnography was "consistent with mild degree of obstructive sleep apnea." (AR 365). Dr. Prem Tambar, a rheumatologist, examined plaintiff in May 20, 2005 and was able to indirectly rule out "any specific significant inflammatory rheumatic disease." (AR 367). Dr. Tambar stated that he suspected plaintiff's symptoms were "soft tissue rheumatic in origin"

and "it is a mater of semantics whether one calls this fibromyalgia or symptoms secondary to underlying depression." *Id.* Following a June 2005 appointment, Dr. Tambar advised that a bone density test indicated osteopenia and that plaintiff suffered from bilateral carpal tunnel syndrome (AR 366).

Plaintiff's claim was reviewed by a nurse-consultant on August 5, 2005. At that time, defendant found that the available clinical data did not support Dr. Derkatz's conclusion that plaintiff could not work or her recommendation that plaintiff only perform simple tasks as tolerated (AR 393). Although Dr. Derkatz found that plaintiff could not concentrate, had difficulty ambulating, and must rest frequently, the medical consultant stated that the records did not contain the results of any testing to substantiate any cognitive difficulties, nor was there any mention in the office notes of difficulty in ambulation. *Id.* Additionally, defendant stated that the medical records indicated a previous Epstein-Barr infection rather than an acute infection, no evidence of lupus, normal thyroid function, and only mild sleep apnea. The medical consultant also determined that plaintiff's symptoms did not meet the criteria for Chronic Fatigue Syndrome ("CFS") established by the Centers for Disease Control ("CDC"). *Id.* In a letter dated August 11, 2005, defendant advised plaintiff that her appeal had been denied. Defendant noted her past Epstein Barr virus exposure, negative lupus testing, and mild sleep apnea, and stated that the medical records received "were insufficient to support a loss of function or provide restrictions or limitations that would prevent the performance of your occupation." (AR 468). Additionally, defendant noted the absence of "evidence of cognitive testing to determine if such difficulties are substantiated." (AR 469).

5

Plaintiff had also applied for long-term disability benefits under the New York Disability Benefits Law. HSBC insured its obligation to pay long-term benefits through a separate policy issued by defendant. Plaintiff's long-term benefits claims was initially denied by defendant. However, following a hearing, the Worker's Compensation Board found that plaintiff was entitled to long-term benefits (AR 477).

Plaintiff instituted this action on September 15, 2006 (Item 1). Defendants filed their answer to the complaint on November 16, 2006 (Item 7) and filed a motion for summary judgment on January 19, 2007 (Item 9). Defendants contend that they are entitled to judgment as a matter of law because plaintiff cannot establish that the denial of benefits was arbitrary and capricious. In response to the motion for summary judgment, plaintiff argued that discovery was necessary to respond to the motion, to determine the proper standard of review, and to determine whether the defendants improperly deny claims for "subjective" illnesses like chronic fatigue syndrome (Item 17). In an order filed March 26, 2008, the court allowed limited discovery for the purpose of determining whether the plan administrator operated under an actual conflict of interest (Item 24). Thereafter, plaintiff made a motion for additional discovery based on the holding in *Metropolitan Life Ins. Co. v. Glenn,* ___ U.S. ___, 128 S.Ct. 2343 (2008) (Item 31). In a decision dated March 11, 2009, the court denied the motion for additional discovery and ordered plaintiff to respond to the motion for summary judgment (Item 36). On April 17, 2009, plaintiff filed its response and cross motion for summary judgment (Item 37). Defendant filed a response to the cross motion on May 8, 2009 (Item 38). The court determined that oral argument was unnecessary. For the reasons that follow, the defendant's motion for summary judgment is denied and the plaintiff's motion is granted.

**DISCUSSION**

It is well settled that a challenge to a denial of benefits under ERISA should be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan grants the administrator discretionary authority to determine eligibility benefits, a deferential standard of review is appropriate. *See Glenn*, 128 S.Ct. at 2348. Under this standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation marks omitted).

According to the Supreme Court decision in *Glenn,* a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate. *See Glenn,* 128 S.Ct. at 2348. Here, it is undisputed that the plan grants the administrator the discretionary authority to determine eligibility for benefits and that defendant both evaluates and pays claims under the STD policy at issue. Thus, a deferential standard of review is appropriate, and the conflict of interest is but one factor to be considered in determining whether the decision to deny benefits was arbitrary and capricious.

"[W]hen judges review the lawfulness of benefit denials, they [should] take account of several different considerations of which a conflict of interest is one." *Glenn,* 128 S.Ct.

at 2351. The weight given to the existence of the conflict of interest will change according to the evidence presented. "[W]here circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," the conflict of interest

> should prove more important (perhaps of great importance) . . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* (citation omitted).

Under arbitrary and capricious review, an administrator's decision to deny ERISA benefits is overturned "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009) (quoting *Pagan,* 52 F.3d at 442). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." *Lanoue v. Prudential Ins. Co. of America*, 2009 WL 3157545, *3 (D. Conn. September 25, 2009) (internal quotation omitted). Courts reviewing plan administrators' benefit denials for arbitrariness and capriciousness are "'not free to substitute [their] own judgment for that of the insurer as if [they] were considering the issue of eligibility anew.'" *Hobson,* 574 F.3d at 83-84 (quoting *Pagan,* 52 F.3d at 442). However, a court reviewing a plan administrator's decision must consider "whether the decision was based on a consideration of the relevant factors." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir. 1995)

(internal quotation marks omitted). In determining whether relevant factors were considered and substantial evidence relied upon in an ERISA eligibility determination, courts are limited to the reasons given "at the time of the denial." *Lanoue*, 2009 WL 3157545 at *3 (internal quotation marks omitted). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000) (internal quotation marks and alteration omitted). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Id.* at 93 (internal quotation marks and alterations omitted).

Plaintiff argues that defendant's "well-documented history of abusive tactics" (Item 37, Att. 3, p. 11) is evidence that defendant was influenced by its conflict of interest as both administrator and payer. Plaintiff also argues that the denial of benefits was arbitrary and capricious in that defendant rejected the opinion of plaintiff's treating physician, failed properly to gather the medical evidence, gave no reasons for its decision, and failed to provide a description of additional information that would be necessary to support plaintiff's claim. Additionally, plaintiff contends that defendant never undertook a meaningful review of the medical evidence, required plaintiff to satisfy requirements that were not specified in the policy, never evaluated plaintiff's occupation and job duties, never conducted an independent medical examination of the plaintiff, and denied plaintiff's claim on the basis of self-reported symptoms and a lack of future appointments. Finally, plaintiff argues that

9

defendant acted arbitrarily when it denied her benefits under the STD policy, but awarded benefits under the long-term policy.

Under the STD policy, disability is defined as "limited from performing the material and substantial duties of your regular occupation" due to sickness or injury (AR 410). In support of plaintiff's application for benefits, Dr. Derkatz provided the Attending Physician's Statement dated April 25, 2005. In it, Dr. Derkatz stated that she was treating plaintiff for fatigue and Epstein Barr Virus, and was to rule out sleep apnea. Dr. Derkatz also stated that plaintiff could "only perform simple tasks as she can tolerate" (AR 265). On May 5, 2005, defendant advised plaintiff that this was insufficient, but that she could provide additional documentation. The court finds that this initial determination was not arbitrary and capricious, as the treating physician provided no objective medical evidence of plaintiff's conditions and only the unsubstantiated conclusion that plaintiff could perform "simple tasks."

Plaintiff was then advised that she needed to provide documentation indicating those activities she could do, and those she could not. On June 6, 2005 Dr. Derkatz supplemented her report to defendant and stated that plaintiff was under her care for Epstein Barr Virus (Chronic Fatigue Syndrome), Depression, Hypothyroid, borderline sleep apnea, and possible Lupus Erythematosis. Her symptoms included "profound fatigue, joint pain of her knees, hips, feet, hands and upper back with tenderness to palpation" (AR 318). Dr. Derkatz concluded that plaintiff's symptoms were "currently debilitating and preclude her from any type of work." *Id.* Dr. Derkatz stated that plaintiff "cannot concentrate, has difficulty ambulating and must rest frequently throughout the day." *Id.* Again, defendant found this information insufficient to award benefits, as the nurse-

consultant determined that the medical documentation did not support the restriction of no work.

Thereafter, plaintiff submitted additional medical records, including lab results, the report of a rheumatologist, and the results of a sleep study. The lab tests indicated normal thyroid function and exposure to the Epstein Barr Virus, but not an acute infection (AR 359). The rheumatologist found no evidence of specific significant inflammatory rheumatic disease but opined that plaintiff's symptoms were "soft tissue rheumatic in origin" (AR 367). Plaintiff's sleep study was consistent with "mild" sleep apnea (AR 365).

Despite the additional medical documentation, defendant denied plaintiff's appeal. While plaintiff complained of difficulty concentrating and ambulating, defendant noted a lack of "evidence of cognitive testing to determine if such difficulties are substantiated" and no mention of difficulty in ambulating in Dr. Derkatz's office notes (AR 469). Additionally, defendant stated that plaintiff did not meet the CDC criteria for Chronic Fatigue Syndrome. *Id.* Finally, defendant found no "support for restrictions and limitations that would prevent the performance of [plaintiff's] occupation." *Id.*

While "the very concept of proof connotes objectivity," and so "it is hardly unreasonable for the administrator to require an objective component to such proof," *Maniatty v. Unumprovident Corp.,* 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002), *aff'd*, 62 Fed. Appx. 413 (2d Cir), *cert. denied,* 540 U.S. 966 (2003), "the subjective element of pain is an important factor to be considered in determining disability." *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (internal quotation marks omitted). Moreover, "[c]hronic fatigue syndrome, like fibromyalgia, poses unique issues for plan administrators,

since for both conditions, '[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.'" *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007) (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003)); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 443 (3d Cir. 1997). Courts recognize that there is no objective test that can conclusively confirm chronic fatigue syndrome. *See Magee v. Met. Life. Ins. Co.,* 632 F.Supp.2d 308, 318 (S.D.N.Y. 2009) (citing *Cook v. Liberty Life Assurance Co. of Boston,* 320 F.3d 11, 21 (1st Cir. 2003)).

However, "[a] distinction exists . . . between the amount of fatigue or pain an individual experiences, which . . . is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Williams*, 509 F.3d at 323; *see also Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16 n.5 (1st Cir. 2003) ("While the diagnosis of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); *Cook v. N.Y. Times Co. Long-Term Disability Plan*, 2004 WL 203111, at *4 (S.D.N.Y. January 30, 2004) ("It is . . . reasonable to insist on some objective measure of claimants' capacity to work, so long as that measure is appropriate . . . .").

Defendant rejected plaintiff's claim for benefits because it concluded that she failed to provide objective medical evidence that supported her claim of total disability. However, plaintiff offered objective medical proof of Epstein-Barr infection, often associated with CFS, and mild sleep apnea. This medical evidence substantiated plaintiff's documented

complaints of profound fatigue, difficulty concentrating, and pain in her joints and back. Additionally, although defendant's nurse-consultant concluded that plaintiff did not satisfy the CDC criteria for CFS, a review of the CDC factors indicates otherwise, as plaintiff suffered from muscle and joint pain, difficulty concentrating, and hypersomnolence.[2] Plaintiff's treating physician opined, based on plaintiff's diagnoses and symptoms, that plaintiff was unable to work as a result of fatigue, pain, and an inability to concentrate. Although an administrator is not obligated to blindly accept the findings of a treating physician, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003), those findings should not be ignored. When the chief symptoms of the illnesses are subjective–such as those symptoms associated with fibromyalgia and CFS –"weight should be given to the treating physician's findings since that physician has the most experience with the patient and his or her history with the symptoms of the illness." *Diamond v. Reliance Standard Life Ins.,* 2009 WL 4279709 (S.D.N.Y. December 1, 2009).

Here, defendant flatly rejected the opinion of plaintiff's treating physician, yet never requested an independent medical examination ("IME") of plaintiff. Defendant based its denial not on evidence that plaintiff was able to work, but on what it perceived as a lack of clinical support for her claim of disability. Given the documentation in plaintiff's file of CFS, sleep apnea, and Epstein Barr infection, and the lack of any medical evidence to the contrary, the court is hard-pressed to find that the decision to deny benefits was based on "substantial evidence."

---

[2] On its website, the CDC states that for a patient to be diagnosed with CFS, that person must exhibit chronic fatigue for six months or longer with other known medical conditions excluded and suffer from four or more other symptoms including impairment in concentration, muscle pain, multi-joint pain without swelling or redness, unrefreshing sleep, headaches, tender lymph nodes, and sore throat.

Similarly, it does not appear that plaintiff's file was reviewed by a physician. The failure to order a timely IME or have a physician review a medical file has been described as a "procedural irregularity" that is a factor to be considered in determining whether an administrator abused its discretion in denying a claim for benefits. *See Diamond*, 2009 WL 4279709 at *7 (defendant had not conducted a physical examination of plaintiff in more than three years when it revoked her disability benefits, "which render[ed] its denial less credible."). Additionally, defendant noted a lack of evidence of cognitive testing, but did not specify what objective testing would be required to show subjective symptoms such as impairment in concentration. ERISA requires an administrator to inform plan participants of the information it seeks and the criteria to be applied. *Magee,* 632 F. Supp. 2d at 318 (ambiguous denial letters, in which "objective evidence" sought is not specified–constitute inadequate notice under ERISA); *see also Cook v. New York Times Co. Long-Term Disability Plan,* 2004 WL 203111, at *4 ("It would be unreasonable to fail to communicate with reasonable specificity what would satisfy" requirements of objective proof). Defendant's letters to plaintiff do not specify the "clinical support" required to substantiate plaintiff's subjective symptoms of pain, fatigue, and an ability to concentrate.

Additionally, the court notes that defendant has a well-documented history of biased claims administration. *See McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126, 131 (2d Cir. 2008). While defendant states that its claims procedures were changed after a November 2004 Regulatory Settlement Agreement ("RSA") (Item 37, Exhibit C) and that plaintiff's claim was filed following the implementation of the 2004 RSA, the chronology of events indicates that plaintiff's claim was decided unfavorably in the months following the RSA. Given the defendant's status as a conflicted administrator, the court finds that

defendant's history of biased claims administration colors, however slightly, the decision to deny benefits in this case. For all these reasons, the court finds defendant's decision to deny benefits to have been arbitrary and capricious under the circumstances.

"[I]f upon review a district court concludes that the [administrator's] decision was arbitrary and capricious, it must remand to the [administrator] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting a denial of the claim or remand would otherwise be a useless formality." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir. 1995) (internal quotation marks omitted); *see also Zuckerbrod v. Phoeniz Mut. Life Ins. Co.,* 78 F.3d 46, 51 n. 4 (2d Cir. 1996) (remand of an ERISA action seeking benefits is inappropriate "where the difficulty is not that the administrative record is incomplete, but that a denial of benefits based on the record was unreasonable.").

In this case, the court cannot conclude that remand would be a "useless formality" and that "no new evidence could produce a reasonable conclusion permitting a denial of the claim." The medical records were limited, and plaintiff did not "clearly" show that she was entitled to benefits. In a close case such as this, the court concludes that remand is the appropriate remedy. *See, e.g., Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review."). To ensure effective review, plaintiff may supplement her file with additional medical evidence. *Magee v. Met. Life Ins. Co.,* 2009 WL 3682423, * 1 (S.D.N.Y. October 15, 2009) (remand allows plaintiff to clarify and supplement the record, facilitating subsequent review).

**CONCLUSION**

The defendant's motion for summary judgment is denied and the plaintiff's cross motion for summary judgment is granted in part. The determination is vacated and the case is remanded for reconsideration consistent with this Decision and Order.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: 3/23 , 2010
p:\pending\2006\06-628.jan2110

16